UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MISTY SOMMER,<br><br>        Plaintiff,<br><br>        v.<br><br>ELMORE COUNTY, MARSA PLUMMER, and JOHN/JANE DOES I through X, whose true identities are presently unknown,<br><br>        Defendants. | Case No. 1:11-cv-00291-REB<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS**<br><br>(DKT. 19) |

        Pending before the Court is Defendants Motion to Dismiss (Dkt. 19).  Having considered the briefing and counsels' oral arguments, and otherwise being fully advised, this motion is denied, in part, and granted, in part, for the reasons explained below.

**INTRODUCTION**

        Defendant Elmore County terminated the employment of Plaintiff Misty Sommer ("Sommer") on October 4, 2010.  Compl., ¶ 32 (Dkt. 1).  Sommer asserts that Elmore County was required to provide her an opportunity to appeal her termination pursuant to the process provided in its personnel policy.  Sommer argues that her status with Elmore County was as a full-time regular employee in a probationary period; Elmore County responds that, because of her probationary status, Sommer was not a "regular" employee entitled to an appeal.

        Sommer filed a Complaint on June 22, 2011, bringing claims against Defendant Elmore County and Marsa Plummer, the Elmore County Clerk, (collectively "Defendants") for (1)

**MEMORANDUM DECISION AND ORDER - 1**

wrongful termination in violation of Sommer's due process rights and (2) negligent infliction of emotional distress.  Defendants responded with the Motion to Dismiss at issue now.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6)[1] tests the sufficiency of the plaintiff's claim for relief.  The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, *i.e.*, that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the Court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 565 U.S. 662, 678-79 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the non-moving party, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 565 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A complaint must contain sufficient factual allegations to provide plausible grounds for entitlement to relief.  *Twombly*, 550 U.S. at 555-56.  "A claim has facial plausibility when the plaintiff pleads factual

---

[1] Although Defendants' Motion to Dismiss refers to "IRCP 12(b)(6)", *see* Mot., p. 1 (Dkt. 19), their memorandum cites to the rules applicable to this case, the Federal Rules of Civil Procedure.

**MEMORANDUM DECISION AND ORDER - 2**

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 565 U.S. at 678.

The Court may not consider any evidence contained *outside* the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)).

Sommer attached five documents to her Complaint: (1) the written Notice of Termination, (2) the Elmore County Personnel Policy, (3) Sommer's Request for an Appeal Hearing, (4) a Notice of Action finding Sommer ineligible for food stamps, and (5) a Notice and Application for Emergency Unemployment Compensation. Compl., Exs. A-E (Dkts. 1-4 - 1-8). The Court has considered only the written Notice of Termination and the Personnel Policy in ruling on the Motion to Dismiss. Defendants have not objected to the authenticity of these documents and, indeed, have cited to them in their briefing. Accordingly, these two documents are the type that may be considered without converting the motion into one for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

**MEMORANDUM DECISION AND ORDER - 3**

## DISCUSSION

**A.     Due Process Claim**

"A threshold requirement to a [either] substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); *Mathews v. Eldridge*, 424 U.S. 318, 332 (1976).  To state a claim under the Due Process Clause, Sommer must first establish she possessed a property interest, deserving of constitutional protection.[2]  *Id.*; *see also Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997).  If a property interest exists, the essential requirements of due process are notice and an opportunity to respond.  *See Cleveland Bd. of Educ. v. Loudermill et al.*, 470 U.S. 532, 546 (1985).

In Idaho, employment is at-will unless an employee is hired pursuant to a contract that specifies the duration of employment or limits the reasons for which an employee may be discharged.  *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 387 (Idaho 2005).  Thus, in the absence of an agreement limiting a party's right to terminate the employment relationship, they may terminate it at any time or for any reason.  *See Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (Idaho 1994); *see also Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 746 (Idaho 1989) ("Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any

---

[2]  A Section 1983 claim based upon procedural due process contains two elements: (1) a deprivation of liberty or property interest protected by the Constitution; and (2) a denial of adequate procedural protections.  *See Brewster v. Bd. of Educ. Of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

**MEMORANDUM DECISION AND ORDER - 4**

reason without incurring liability."). This rule applies to state/county employers as well: if an employee serves at-will, "he or she has no reasonable expectation of continued employment, and thus no property right." *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003); *Cameron v. Owyhee County*, No. CV-09-423-REB, 2011 WL 2945820 *9 (D. Idaho July 20, 2011).

Sommer agrees that she was an at-will employee, but both parties submit varying arguments as to how Sommer should be classified according to the Elmore County Personnel Policy (the "Policy").[3] *See* Compl., Ex. B (Dkt. 1-5). The reason the parties disagree about Sommer's classification is that the Policy explains the "Significance of Employee

---

[3] The Policy classifies employees, in relevant part, as provided below, *see* Policy, p. 9 (Dkt. 1-5):

    1. Employee Classification

    The classification of the position you hold with Elmore County may affect the status of obligations or benefits associated with your employment. The primary classes of employees and their respective status is outlined as follows:

        a. Full-Time Regular Employees

    Employees whose typical work schedule calls for at least 20 hours of scheduled work during each weekly payroll period. Full-time regular employees shall receive all employee benefits provided by Elmore County as such benefits now exist or may be subsequently changed.

        b. Part-Time Regular Employees
        . . .
        c. Casual/Seasonal Employees

    Employees who provide services for Elmore County on an irregular or temporary basis, less than 5 months per year or 19 hours a week or less, [and] receive no benefits provided to regular employees, except those required by law or those provided by express written authorization of the Board of Commissioners.

**MEMORANDUM DECISION AND ORDER - 5**

Classification", providing: "The procedures for hiring, promotion, and transfer of full-time employees shall be subject to the provisions of this policy." Policy, p. 9 (Dkt. 1-5). The Policy also "establishes the right for full-time regular and part-time employees to a hearing prior to, any final decision on discharge." Policy, p. 20 (Dkt. 1-5). The termination process provides for notice of the charges, a hearing to last no longer than two hours with a record maintained, at which the employee may be represented by legal counsel and present evidence and rebut information upon which the proposed personnel action is based. *Id.*

Defendants' counsel argued at the hearing that, regardless of whether Sommer is considered a "regular" full-time employee, as an at-will employee she has no property right in continued employment and, thus, no basis for a due process challenge. Defendants' briefing, and the record of Sommer's employment, suggests otherwise.[4] Defendants repeatedly refer to the

---

[4] The briefing does not contain a full discussion of the points and authorities supporting this position, nor did Sommer's response provide a detailed response to such an argument. The Court's own research found some persuasive authority indicating that even if Sommer is classified as a regular employee for which a hearing is provided under the Policy, that might not be enough to confer a "property" right sufficient to warrant Constitutional due process protections. For example, an Oregon federal district court recently considered whether a plaintiff's claim that a company's Standard Operating Procedures ("Procedures"), outlining termination procedures, conferred a protected property interest such that the employee was entitled to a hearing before he was terminated. *Franklin v. Clarke*, Civ. No. 10–00382–CL, 2011 WL 4024638, *3-5 (D.Or. Sept. 9, 2011). Significant to that court's consideration of the plaintiff's claim was the following:

> Individuals who have a property interest created by an "independent source, such as state law" are entitled to procedural due process protections. . . . . In Oregon, a property right can be created by a statute or regulation, . . . *or by city personnel policies or handbooks* . . . . "At-will" employees are not entitled to constitutional due process protection. . . . .
>
> Plaintiffs retain their "at-will" status *even when* the employee handbook or other *policy provides that the employees should only*

**MEMORANDUM DECISION AND ORDER - 6**

hearing provided to regular employees and even refer to it as a "right" or "guarantee[]" for those employees.  *See, e.g.*, Defs.' Mem., p. 2 (Dkt. 19-1) ("Sommer was a probationary at-will employee at the time of her termination, and the County's Personnel *Policy only extends the opportunity for a pretermination appeal to full-time* and part-time *regular employees*.") (internal citations omitted; emphasis added); Defs.' Mem., p. 4 ("In the . . . Policy, *the only limitation on the at-will employment relationship is that full-time regular* and part-time regular *employees may request a pre-deprivation appeal* hearing before termination.  This hearing is available to regular

---

*be terminated* for certain reasons or *after certain procedures* . . . or when the city had a "standard practice of affording hearings."

*Id.* at *4 (emphases added and internal citations omitted).  The Oregon court determined that the Procedures "merely provide a non-binding framework for disciplining at-will employees and do not create a protected property interest."  *Id.* at *5.  *See also Lawson v. Umatilla County*, 139 F.3d 690, 693-94 (9th Cir. 1998) (applying Oregon state law and determining that because the county defendant's policy contained a disclaimer preserving the employee's at-will status, the county's rules about termination of permanent employees "merely provide a framework for disciplining at-will employees which is not binding on the County").
    However, the Court is reluctant to issue a ruling on this issue in the absence of a clear, developed argument, citing to legal authorities, along with an opportunity for response briefing.  Although the Idaho Supreme Court has addressed whether a *statute* establishing that "city clerks are at-will employees, subject to removal from the appointive office without notice or a hearing," may be modified by an employment manual outlining procedures for dismissal, including notice and a hearing, this does not present the exact same circumstances as the present case.  *See Boudreau v. City of Wendell*, 213 P.3d 394, 395 (Idaho 2009).  The policy/manual in *Boudreau* contained a disclaimer similar to the one in Elmore County's Policy, *i.e.*, that the policy is not a contract, but the court found the city clerk was not entitled to the hearing provided for in the policy because "once the legislature determined that a municipal appointive officer is at-will and provided for the removal of such an officer without notice or a hearing," the city "could not alter that status by adopting a [policy/manual]."  *Id.*  Here, it does not appear that there is a legislative statement about county employees that the Elmore County Policy was attempting to override.  In short, because there is not a clear answer provided by Idaho case law and the arguments related to this issue were not fully developed by the parties in the proceedings on the motion to dismiss, the case will proceed at this time, without prejudice to Defendants raising this argument and fully developing it in future motions.  *See* D. Idaho Loc. Civ. R. 7(b) (explaining that non-routine motions must be accompanied by a separate brief "containing all of the reasons and points and authorities, relied upon by the moving party").

**MEMORANDUM DECISION AND ORDER - 7**

employees 'prior to any final decision on discharge, demotion with attendant change in pay, or suspension without pay.'") (internal citations omitted; emphases added); *Id.*, pp. 4-5 ("Sommer's termination was proper because she was a probationary employee, and *was not a Full-Time Regular employee, otherwise provided a pre-termination hearing*.") (emphasis added); Defs.' Reply, p. 2 (Dkt. 21) ("In Elmore County, full-time regular employees through the Personnel Policy are afforded a pre-deprivation hearing upon notice of termination (if the employee requests it). Sommer, while a full-time employee, was a probationary, and not a 'regular' employee, and had no such hearing right.") (internal citations omitted); *Id.*, p. 5 (the Policy "only guarantees hearings to full time regular employees"). Thus, Defendants' briefing indicates that there may be some limitation on the at-will employment relationship, at least with respect to "regular" employees, who have rights to a pre-termination appeal hearing. *See* Reply, pp. 4-5 (Dkt. 21); Defs.' Mem., p. 4 (Dkt. 19-1) ("In the . . . Policy, the only limitation on the at-will employment relationship is that full-time regular and part-time regular employees may request a pre-deprivation appeal hearing before termination. This hearing is available to regular employees.").

Hence, Sommer's claim, if any, based upon the alleged deprivation of a hearing depends on whether she is considered a "regular" employee. Although being careful not to characterize the Policy as a contract in and of itself, determining its scope turns on principles of contract interpretation and will be examined accordingly in this limited instance. *See, e.g.*, *Metcalf*, 778 P.2d at 747 ("This Court has recognized that "[a]n employee's handbook can constitute an element of the contract. Unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract, a court may conclude

from a review of the employee handbook that a question of fact is created regarding whether the handbook was intended by the parties to impliedly express a term of the employment agreement.") (internal citations omitted).[5]

As noted above, the parties disagree about how to "interpret" the language of Elmore County's Policy. Defendants suggest that the personnel policy "indicates that probationary employees enjoy no procedural limits to their termination" and because "Sommer was a probationary employee and not a full-time "regular" employee," Defendants had no limits when terminating her employment relationship. Defs.' Reply, p. 3 (Dkt. 21). Sommer counters that she was a "full-time regular at-will employee still in a probationary status." Resp., p. 4 (Dkt. 20). Both interpretations are "reasonable" and thus the Policy is ambiguous. *Potlatch Education Ass'n v. Potlatch School District No. 285*, 226 P.3d 1277, 1280 ( Idaho 2010) (internal citations and quotations omitted) (explaining that a contract term is ambiguous "when there are two different reasonable interpretations"). Sommer was on probationary status and the Policy described that status "as an integral part of the selection process . . . utilized for closely observing the employee's work, for securing the most effective adjustment of a new employee to his or her position and for rejecting an introductory employee whose performance is not satisfactory," (Dkt. 1-5, Ex. B, p. 9). However, nothing in the Policy says that a hearing is

---

[5] The Policy provides that: "THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT." Policy, p. 2, Compl., Ex. B (Dkt. 1-5) (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 9**

provided *only* for employees *not* in a probationary period. Therefore, because "interpreting an ambiguous term is an issue of fact," dismissal is precluded at this time. *Potlatch*, 226 P.3d at 1280.

B.   **Violations of State Constitutional Civil Liberties as a Basis for Monetary Damages**

Defendants argue that Sommer cannot obtain monetary damages under Article 1, section 13 of the Idaho Constitution[6] for deprivation of her due process rights, Compl., ¶¶ 55-58 (Dkt. 1), because there is no such private cause of action under the Idaho Constitution. Other courts in this District have ruled that the "Idaho Constitution does not provide for a private cause of action for monetary damages based on an alleged violation of person's civil liberties." *Boren v. City of Nampa*, No. CIV 04-084-S-MHW, 2006 WL 2413840, *10-11 (D.Idaho Aug. 18, 2006) (citing *Katzberg v. Regents of the Univ. of California*, 58 P.3d 339, 127 Cal.Rptr.2d 482 (2002); *Spurrell v. Block*, 701 P.2d 529, 535 (Wash.App. 1985)). While acknowledging that the Supreme Court of Idaho "has never specifically addressed this issue," the federal district court in *Boren* was "confident that [the Idaho Supreme Court] would not find a private cause of action." *Id*. Accord, *Mott v. City of McCall*, CV-06-063-S-MHW, 2007 WL 1430764, *6 (D.Idaho May 14, 2007) ("there is no private cause of action for an Idaho constitutional law violation").

Both of these cases were cited by Defendants in support of their request to dismiss the monetary damages claim for the alleged state civil rights violation. There is a third case taking the same view, *Young v. Young*, CV-06–324–S–EJL, 2009 WL 909241, *9-10 (D.Idaho Mar. 31, 2009). See *Young* (explaining that "[t]o the extent Counts 3 and 4 set forth a claim for a

---

[6] This section provides, in relevant part, that "[n]o person shall . . . be deprived of life, liberty or property without due process of law." Idaho Const. Art. I, § 13.

**MEMORANDUM DECISION AND ORDER - 10**

violation of Idaho's Constitution, a civil cause of action for damages of a state constitutional right does not exist," and because "State constitutional claims are not cognizable under Idaho law . . . this claim must be dismissed as to all defendants") (citing *State v. Charpentier*, 962 P.2d 1033, 1037 (Idaho 1998) (rights of individuals under the Idaho Constitution not greater than those provided under the federal constitution)).

This Court finds these cases, and the primary case upon which they rely (*Katzberg v. Regents of University of California*, 58 P.3d 339, 127 Cal.Rptr.2d 482 (2002)) persuasive and adopts their reasoning and decision. The *Katzberg* court address the question of "whether, assuming the complaint states a violation of plaintiff's due process liberty interest, plaintiff may maintain an action for monetary damages to remedy the asserted violation of his due process liberty interests under article I, section 7(a)" of the California Constitution.[7] *Id.* at 486-87. The court considered cases from multiple jurisdictions when concluding that a plaintiff may not maintain such an action in California. *See, e.g., Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005) ("We have never recognized a *Bivens-type* private right of action for constitutional torts under the Alaska Constitution. We have stated that we will not allow a constitutional claim for damages, "except in cases of flagrant constitutional violations where little or no alternative remedies are available."); *Hunter v. City of Eugene*, 787 P.2d 881, 883 (Or. 1990) ("We hold that plaintiffs may not bring an action for damages against defendants directly under Article I, section 8, of the Oregon Constitution."). In short, the reasoning and the conclusions of *Katzberg*,

---

[7] This provision is similar to Idaho's equivalent Constitutional guarantee, providing: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." Cal. Const., Art. I, § 7(a).

**MEMORANDUM DECISION AND ORDER - 11**

the cases the California court cites, and the analogous cases from the District of Idaho are compelling authority and are followed here.

Sommer offers no cases finding otherwise, but instead relies on *Allied Bail Bonds, Inc. v. County of Kootenai*, 258 P.3d 340 (Idaho 2011). Sommer argues that *Allied's* significance "is that, as recently as July of 2011, the Idaho Supreme Court had the opportunity to hold that in Idaho there is no private cause of action for monetary damages based on an alleged violation of a person's civil liberties," but did not do so. However, that issue was not before the *Allied Bail Bonds* court, and the negative inference by implication argument will not carry the day here, in the face of the multiple decisions identified above.

## C.   Negligent Infliction of Emotional Distress

There are five elements to a claim for negligent infliction of emotional distress in Idaho: (1) the existence of a duty; (2) a breach of that duty; (3) proximate cause; (4) damages; and (5) physical manifestation of the injury. *Czaplicki v. Gooding Joint School Dist. No. 231*, 775 P.2d 640 (1989). Sommer alleges that she suffers from severe emotional distress, suffering from depression, anxiety, fear, frustration, and irritability. Compl., p. 13 (Dkt. 1). At the oral argument Defendants counsel conceded that these are sufficient to allege injury for purposes of the motion for summary judgment, but argue that Sommer has not plead a duty owed to her by Defendants sufficient to support a negligent infliction of emotional distress ("emotional distress") claim. *See also, e.g.*, *Czaplicki*, 775 P.2d 640 (holding that a plaintiff's claim for emotional distress damages will survive summary judgment as long as they allege physical manifestations of the emotional distress); *Cook v. Skyline Corp.*, 13 P.3d 857, 865-66 (Idaho 2000) (allowing emotional distress claims to proceed because plaintiffs had testified "that the

**MEMORANDUM DECISION AND ORDER - 12**

situation was 'very stressful,'" that the problems put distance between them, that one felt ill just being in the house and she suffered from frustration, headaches and irritability and that the other suffered from ulcers and anxiety, and that he was "shaky" and "shaky-voiced").

Thus, the only remaining issue for present purposes is whether Sommer has adequately pled that Defendants owed her a duty. Sommer asserts that the duty Defendants breached is the duty of good faith and fair dealing, which she asserts is applied to all employment agreements. Pl.'s Resp., p. 8 (Dkt. 20). Sommer did not allege this as claim in her Complaint, but offers it now to satisfy the duty element of her emotional distress claim. "The covenant of good faith and fair dealing is a judicially created exception to the employment at-will doctrine based on a contractual duty of good faith." *Crea v. FMC Corporation*, 16 P.3d 272, 276 (Idaho 2000). It requires the parties to "perform in good faith the obligations imposed by their agreement," *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 389-390 (Idaho 2005), and implies obligations into every employment contract. *Sorensen v. Saint Alphonsus Regional Medical Center, Inc.*, 118 P.3d 86 (2005); *Metcalf*, 778 P.2d 744 (1989). Any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant. *Metcalf*, 116 Idaho at 627, 778 P.2d at 749.

Defendants argued that the duty of good faith and fair dealing in employment contracts is limited to actions such as taking away sick leave or other rights already earned. *See* Reply Br., p. 5. In a recent decision from the District of Idaho, the court determined: "[A]lthough the issue has not been squarely decided by Idaho courts, this Court is confident that Idaho courts would not recognize a claim for [emotional distress] in [the employment] context. The Plaintiff's claim

**MEMORANDUM DECISION AND ORDER - 13**

for negligent infliction of emotional distress is therefore subject to dismissal." *Feltmann v. Petco Animal Supplies, Inc*., No. 2:11–cv–414–EJL–MHW, 2012 WL 1189913, *6 (D.Idaho Mar. 20, 2012). The court in *Feltmann* considered that "other courts considering this issue have generally held that a claim for negligent infliction of emotional distress cannot lie in the employment context." *Id.*[8] This Court finds the reasoning and conclusion in *Feltmann* persuasive, and determines that the emotional distress claim, as pled in the Complaint, does not state a claim for relief and must be dismissed. Sommer was an at-will employee with no reasonable expectation of continued employment. As the *Feltmann* court noted "the Idaho Supreme Court held (over a strong dissent), that a plaintiff could not pursue such a claim, reasoning that employment at-will cannot be converted into a guarantee of employment by bringing an emotional distress claim." *Id.* (citing *Sorensen v. Saint Alphonsus Regional Medical Center, Inc*., 118 P.3d 86 (Idaho 2005).

---

[8] *See, e.g. Herman v. United Bhd. of Carpenters and Joiners*, 60 F.3d 1375, 1386 (9th Cir. 1995) (holding that Nevada law precludes emotional distress claims in the employment context); *Dodge v. U.S* ., 162 F.Supp.2d 873 (S.D.Ohio 2001) (holding that Ohio law does not recognize a separate tort for negligent infliction of emotional distress in the employment context); *Snyder v. Medical Service Corp*., 35 P.3d 1158, 1164 (2001) ("absent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes."). *See also Berry v. World Wide Language Resources, Inc*., 716 F.Supp.2d 34, 52 (D.Me. 2002) (applying Maine law and declining to recognize a "special relationship" in the employment context sufficient to support a claim for negligent infliction of emotional distress). *See also, Perodeau v. City of Hartford*, 259 Conn. 729, 792 A.2d 752 (2002) (disallowing emotional distress claims against individual employees who were involved in plaintiff's termination). *Cf., Miller v. Fairchild Industries, Inc*., 797 F.2d 727, 738 (9th Cir. 1986) (allowing an [emotional distress] claim to proceed under California law where the conduct giving rise to that claim was separate from that underlying the main claim of retaliatory discharge).

**MEMORANDUM DECISION AND ORDER - 14**

## CONCLUSION

At this stage in the proceedings the Court finds that Sommer is entitled to proceed, but only on her Section 1983 cause of action. The allegations in the Complaint for that cause of action satisfy the Rule 12(b)(6). Because the Court has denied, in part, Defendants' Motion, the issue of attorneys' fees is moot at this time.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Dkt. 19) is DENIED, in part, and GRANTED, in part, as set forth above.



DATED: September 28, 2012.

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**